# AFFIDAVIT FOR SEARCH WARRANT

I, Warren C. Smith, being duly sworn, depose and state;

I am a Special Agent of the United States Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2007. I am currently assigned to the Chattanooga Field Office and have participated in numerous investigations that fall under the investigative jurisdiction of ATF including, but not limited to, violations involving the unlawful manufacture and possession of firearms.

I am a graduate of the United States Border Patrol Academy and served as a Patrol Agent from 2001 to 2007. Additionally, I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training program. I also have a Bachelor's degree in Sociology with a Concentration in Criminal Justice from the University of Tennessee in Knoxville, Tennessee

This affidavit is submitted in support of an application for a search and seizure warrant for the following locations: the residence of Dequan L. LACY (aka Sam BROWN) located at 282 Templeton Lane, Hixson, Tennessee, to include all vehicles and outbuildings located on the property and the residence located at 282 Templeton Lane, Hixson, Tennessee, also including all vehicles and outbuildings. The information contained in this affidavit has been obtained by your affiant from fellow law enforcement officers, including DEA Task Force Officers Jamie Hixson and Bill Bailey, ATF Special Agent Warren Smith and ATF Task Force Officer Phillip Narramore, through interviews of confidential sources and review of reports prepared by those officers. Based upon

1

your Affiant's training, experience, and participation in investigations involving large amounts of controlled substances, your Affiant knows:

(a) That drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies;

(b) That drug traffickers very often place assets in corporate entities in order to avoid detection of these assets by government agencies;

(c) That even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them;

(d) That large-scale narcotics traffickers must maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics business;

(e) That narcotics traffickers maintain books, records, receipts, notes ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That narcotics traffickers commonly "front" (provide narcotics on consignment) controlled substances to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them;

(f) That it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

2

(g) That it is common for large-scale drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, their businesses, bank safe deposit box, and/or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

(h) That it is common for persons involved in large-scale narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and control over.

(i) That when drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys, and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency.

(j) That the sale of controlled substances generates large quantities of United States currency in small denominations (commonly referred to as "street money");

3

(k) That it is common for drug dealers to physically handle and count the "street money" after receiving it in exchange for the controlled substances, thereby leaving residue traces of controlled substances on the "street money." That law enforcement agencies own dogs which are trained to react to the scent of controlled substances and residue traces of controlled substances; and that those trained dogs have reacted to narcotics tainted currency negotiated at banks and concealed in the residences of narcotics traffickers.

(l) That the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

(m) That the Currency Transaction Report (CTR) (IRS form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000 causes tremendous problems for narcotics traffickers when they attempt to negotiate their illegal profits at a financial institution;

(n) That, in order to evade the filing of a CTR, narcotics traffickers often "structure" their currency transactions so that no one transaction exceeds $10,000 or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency;

(o) That narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of

4

money they have spent during the year which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses;

(p) That controlled substances traffickers commonly maintain addresses of telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

(q) That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product and that these traffickers usually maintain these photographs in their possession.

(r) That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances;

(s) That drug traffickers commonly have in their possession, that is on their person, at their residences and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to: narcotics, jewelry, narcotics paraphernalia, books, records and U.S. currency.

1. An investigation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Chattanooga Police Department (CPD), and the Drug Enforcement Administration (DEA) have identified a Dequan L. LACY (aka Sam BROWN) as operating in the Eastern District of Tennessee, and is responsible for the transportation and distribution of large quantities of marijuana. The investigation was initiated by the

development of information given by Confidential Source (CS-1) by the Bureau of Alcohol Tobacco, Firearms and Explosives. CS-1 has previously provided information that has led to the arrest and conviction of numerous individuals selling narcotics. CS-1 has provided information regarding criminal activity which has been independently corroborated by other agents/officers as accurate. While cooperating with ATF and CPD, CS-1 has given information that Dequan L. LACY was supplying large amounts of marijuana to London Cross. CPD Narcotics, on May 27, 2011, executed a search warrant on the residence on London Cross and recovered approximately seven pounds of marijuana. London Cross and Dequan LACY are related. Dequan L. LACY was on the scene of the search warrant executed at the home of London Cross by CPD Narcotics.

2. On July 3, 2011, CPD Narcotics Detective Terry Topping advised that a confidential source (CS-2) stated that he/she has received information that Dequan L. LACY (aka Sam BROWN) was selling marijuana in the Chattanooga (TN) area and to London Cross. CS-2 has previously provided information that has led to the arrest and conviction of numerous individuals selling narcotics.

3. In June 2011, DEA Task Force Officer Jamie Hixson, observed Dequan L. LACY leaving the residence located at 282 Templeton Lane, Hixson, Tennessee.

4. On July 3, 2011, CPD Interdiction Officer George Ramiro, initiated a traffic stop of a 2006 Chevrolet Silverado registered to Dequan L. LACY. Officer Ramiro, approached the vehicle and found that Dequan L. LACY's wife, Makesha Lacy was driving the vehicle. Officer Ramiro asked if there were any drugs, firearms, or money in the vehicle. Makesha Lacy stated that she did not. Makesha Lacy told Officer Ramiro that he could search the vehicle. Officer Ramiro conducted a search of the vehicle. Officer Ramiro found a black duffel bag with approximately one hundred sixty

four thousand nine hundred ninety five dollars ($164,995) in U.S. currency. A later search of the vehicle revealed a firearm located in the vehicle and mail with Makesha Lacy's name and the address of 282 Templeton Lane, Hixson, Tennessee.

5. On July 3, 2011, Makesha Lacy was interviewed by CPD Interdiction Officer Jason Dugan. Makesha Lacy stated that she and Dequan L. Lacy reside at 282 Templeton Lane, Hixson, Tennessee. Makesha Lacy also stated that Dequan L. Lacy's name was on the lease of the residence located at 282 Templeton Lane, Hixson, Tennessee. This information was later verified by Officer Dugan when he contacted Charlotte Clark who is a leasing agent for the townhomes.

6. Dequan L. Lacy has a prior conviction in 2005 for marijuana for resale.

7. On July 3, 2011, after the traffic stop of Makesha Lacy, CPD Officer Fuller initiated a traffic stop on a blue BMW with dark tinted windows. Officer Fuller approached the vehicle and saw Dequan L. LACY (aka Sam BROWN). Officer Fuller noticed the strong smell of marijuana coming from the car. Dequan L. LACY stated that he had smoked a "blunt" earlier. Officer Fuller was given consent to search the vehicle. Officer Fuller found that Dequan L. LACY had approximately two thousand nine hundred eight dollars ($2908.00) in small denominations of U.S. currency.

The Affiant submits that probable cause exist to believe that Dequan L. LACY has been involved in a continuing series of narcotics violations in the Eastern District of Tennessee and that his activity has generated significant income. The Affiant further submits Dequan L. LACY utilizes his residence located at 282 Templeton Lane, Hixson, Tennessee, to facilitate his drug trafficking activity and the residence located at 282 Templeton Lane, Hixson, Tennessee is also utilized for the storage and distribution of marijuana. Your Affiant further submits that probable exist to have the residence,

7

vehicles and outbuildings located at 282 Templeton Lane, Hixson, Tennessee and the residence, outbuildings and vehicles located at 282 Templeton Lane, Hixson, Tennessee located in the Eastern District of Tennessee searched for the following items:

(1) United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, notes and other documents showing an accumulation of assets, wealth, or money to the extent that these items are found in such quantity, substance and/or quality as to permit a reasonable inference that such items are proceeds of drug trafficking;

(2) Books, photographs, records, receipts, notes, ledgers and other papers which show the transportation, ordering, purchase, distribution, possession, sale or manufacture of controlled substances;

(3) Address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers, written or typed by hand as opposed to printed commercially;

(4) Books, letters, records, computerized and electronic records, receipts, bank statements and records, money drafts, letters of credit, wire transfers, money order and cashier's check receipts, passbooks, bank checks, and other items that reflect the expenditure, obtaining, secreting, transfer or concealment of drug proceeds;

(5) Controlled substances, material and paraphernalia for manufacturing, packaging, cutting, weighing and distributing controlled substances.

(6) Indicia of occupancy, residency, and/or ownership of real property, including but not limited to deeds, utility and telephone bills, envelopes and keys;

(7) Papers, tickets, notes schedules, receipts and other documents relating to travel to and from drug source areas and drug distribution areas;

(8) Firearms;

(9) Any and all other material evidence of violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 881 which include manufacturing, possession with intent to distribute and distribution of controlled substances. *Request execution after 10:00 PM E? due to time of seeing Judge. Warrant will be executed immediately upo? approval.*

_____
Warren C. Smith
Special Agent, ATF

Subscribed and sworn to before me
**this 3rd day of July**, 2011.

_____
William B. Mitchell Carter, U.S. Magistrate Judge

9